IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JONATHAN GELMAN and STACY GELMAN,<br><br>                    Plaintiffs,<br><br>        v.<br><br>SHERYL ROSEN and KENNETH ROSEN,<br><br>                    Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 14-6790 (JBS/KMW)<br><br>**OPINION** |

APPEARANCES:

Steven E. Angstreich, Esq.,
Nicole D. Gervato, Esq.
WEIR & PARTNERS LLP
The Liberty View Building
457 Haddonfield Road, Suite 420
Cherry Hill, NJ 08002
      Attorney for Plaintiffs

Lila Wynne, Esq.
MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN, P.C.
200 Lake Drive East, Suite 300
Cherry Hill, NJ 08002
      Attorney for Defendant

**SIMANDLE, Chief Judge:**

**I.    INTRODUCTION**

     In this remediation action [Docket Item 12], Plaintiffs
Jonathan and Stacy Gelman (hereinafter, "Plaintiffs") move to
strike twenty-eight of Defendants Sheryl and Kenneth Rosen's
affirmative defenses (hereinafter, "Defendants") pursuant to
Federal Rule of Civil Procedure 12(f).

For the reasons set forth below, Plaintiffs' motion will be granted in part and denied in part.

## II.  BACKGROUND

### A. Factual and Procedural Background

The Plaintiffs and Defendants own adjacent properties in Margate City, New Jersey.[1] (Compl. at ¶¶ 5, 7.) In their Complaint, Plaintiffs generally assert that the Defendants' underground heating oil storage tank ("UST") started to leak, contaminating the surrounding soil with heating oil. (Id. at ¶¶ 8-9.) Upon learning of the leaking tank, Defendants had the tank removed on August 6, 2013, but did not immediately advise Plaintiffs of the leak, the tank's removal, nor the surrounding soil contamination. (Id. at ¶¶ 10, 12.) Rather, Plaintiffs only learned of the potential contamination on March 6, 2014, when Defendants' insurance company requested that Plaintiffs allow Defendants' environmental consultant "to perform investigative work to determine the extent of contamination on and under Plaintiffs' property." (Id. at ¶ 13-15.) Following the investigation, Plaintiffs learned that "the contamination extends at least under fifty percent (50%) of Plaintiffs'

---

[1] The facts set forth herein are drawn from the Complaint, which the Court accepts as true for the purposes of the pending motion.

property and their home," requiring significant and costly remediation. (Id. at ¶¶ 17–20.)

As a result of the contamination and resultant need for remediation, Plaintiffs filed the initial Complaint in this action on October 30, 2014, asserting claims for negligence, trespass, nuisance, and remediation under New Jersey's Spill Compensation and Control Act (hereinafter, the "Spill Act"). (See Compl. at ¶¶ 21–44.)  On December 23, 2014, Defendants filed an answer [Docket Item 9], in which Defendants assert thirty-nine affirmative defenses to Plaintiff's claims.  (See Answer at 5 ¶ 1 – 8 ¶ 39.)  The pending motion to strike followed.

## III. STANDARD OF REVIEW

The Court, either sua sponte or on motion by a party, may, in its discretion, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f); see also Tonka Corp. v. Rose Art Indus., Inc., 836 F. Supp. 200, 217 (D.N.J. 1993) (citation omitted) (noting court's considerable discretion in connection with motions to strike).

Motions to strike, however, generally are viewed with disfavor and rarely are granted.  See Garlanger v. Verbeke, 223 F. Supp. 2d 596, 609 (D.N.J. 2002).  Indeed, "'there appears to be general judicial agreement,'" that motions to strike "should

3

be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action.'" Mifflinburg Telegraph, Inc. v. Criswell, ___ F. Supp. 3d ____, No. 14-612, 2015 WL 268806, at *5 (M.D. Pa. Jan. 21, 2015) (citations omitted); see also Symbol Techs., Inc. v. Aruba Networks, Inc., 609 F. Supp. 2d 353, 359 (D. Del. 2009) ("[E]ven where the challenged material is redundant, immaterial, impertinent, or scandalous, a motion to strike should not be granted unless the presence of the surplusage will prejudice the adverse party.") (internal quotations omitted).

 As a result, affirmative defenses should only be stricken where the defenses could "not have any possible bearing on the outcome of the litigation," Garlanger v. Verbeke, 223 F. Supp. 2d 596, 609 (D.N.J. 2002), or where the undisputed allegations of the affirmative defense prove "clearly" insufficient. Cipollone v. Liggett Grp., Inc., 789 F.2d 181, 188 (3d Cir. 1986), rev'd in part on other grounds, 505 U.S. 504 (1992); see also Gateway Bottling, Inc. v. Dad's Rootbeer Co., 53 F.R.D. 585, 588 (W.D. Pa. 1971) (defining "impertinent" and "scandalous," within the meaning of Rule 12(f), as including those defenses that are invalid or not made in good faith and

4

which do not fairly present questions of law or fact "which the court ought to hear").

## IV.  DISCUSSION

Plaintiffs move to strike twenty-eight of the Answer's thirty-nine Affirmative Defenses.  (See generally Pls.' Br.) The Court will address each of the disputed defenses in turn.

### A. Affirmative Defenses Nos. 21-27

At the outset, the Court notes that Defendants "consent to the dismissal of affirmative defenses 21 through 27." (Defs.' Opp'n at 8.)  Plaintiffs' motion will, accordingly, be granted with respect to these defenses, and Affirmative Defenses Nos. 21 to 27 will be stricken from Defendants' Answer.

### B. Affirmative Defenses Nos. 2, 7, 9, 10, 15, 17, 18, 29, 32, and 39

In Affirmative Defense Nos. 2, 7, 9, 10, 15, 17, 18, 29, 32, and 39, Defendants generally plead that Plaintiffs' claims are barred by an array of equitable defenses, Plaintiff's contributory negligence, and statutory defenses under the Spill Act.  (See generally Answer at 5-8.)

Plaintiffs, however, argue that Affirmative Defense Nos. 2, 7, 9, 10, 15, 17, 18, 29, 32, and 39 must be stricken, because they constitute "nothing more than bare bones conclusory allegations." (Pls.' Br. at 5.)

In so arguing, however, Plaintiffs misstate the pleading standard for affirmative defenses. Indeed, as stated above, the Federal Rules only require that any affirmative defenses be affirmatively stated. See FED. R. CIV. P. 8(c). Therefore, affirmative defenses need not be bolstered by any specific factual showing. See Collura v. Ford, 303 F.R.D. 57, 89 (E.D. Pa. 2014) (noting that "the majority of district courts in this Circuit to address the issue," in keeping with the general principles regarding motions to strike, have declined to extend a plausibility requirement to affirmative defenses) (citations omitted). Rather, in order to avoid being stricken, the defenses must have some possible relation to the controversy, must not result in clear confusion or prejudice, and must generally put the adversary on notice of the nature of the contentions. See Tyco Fire Prods. LP v. Victaulic Co., 777 F. Supp. 2d 893, 900 (E.D. Pa. 2011) ("An affirmative defense need not be plausible to survive; it must merely provide fair notice of the issue involved.") (citations omitted); F.T.C. v. Hope Now Modifications, LLC, No. 09-1204, 2011 WL 883202, at *3 (D.N.J. Mar. 10, 2011) (joining other Districts in this Circuit that have concluded that the heightened pleading standard of Twombly and Iqbal do not apply to affirmative defenses).

Here, Plaintiffs have not alleged, nor could they allege, that Affirmative Defense Nos. 2, 7, 9, 10, 15, 17, 18, 29, 32,

6

and 39 lack any potential relation to the disputed issues in
this litigation, nor have Plaintiffs asserted that they will
suffer any prejudice from the assertion of these Affirmative
Defenses.  Rather, Plaintiffs solely rely, without explanation,
upon the defenses' "conclusory" nature.  (Pl.'s Br. at 5.)  This
allegation standing alone, however, fails to satisfy the heavy
burden for motions for strike under Federal Rule of Civil
Procedure 12(f), and the defenses themselves otherwise place
Plaintiffs on notice of Defendants' contentions.  See O'Gara v.
Countrywide Home Loans, Inc., No. 08-113, 2010 WL 3070211, at *2
(D. Del. July 30, 2010) (denying a motion to strike affirmative
defenses as to defenses which placed the plaintiff on notice,
and where the plaintiff would suffer no prejudice).  Plaintiffs
are free to explore the grounds for these defenses through
contention interrogatories; if Defendants are unable to supply
appropriate grounds for an affirmative defense, they are
expected to voluntarily dismiss it.

    Plaintiffs' motion will therefore be denied with respect to
Affirmative Defense Nos. 2, 7, 9, 10, 15, 17, 18, 29, 32, and
39, without prejudice to Plaintiffs' right to propound
contention interrogatories regarding each Affirmative Defense.

### C. Affirmative Defenses Nos. 3 and 38

    Affirmative Defense Nos. 3 and 38 both generally allege
that Plaintiffs' claims must be reduced, excused, and/or

discharged, as a result of Plaintiff's failure to mitigate damages.  (See Answer at 5, 8.)

Plaintiffs argue that these defenses must be striken as legally insufficient and needlessly repetitive.  (See Pls.' Br. at 5.)  Defendants counter, however, that Plaintiffs predicate their challenge "upon unsupported and disputed facts" that "cannot be resolved on a motion to strike."  (Defs.' Opp'n at 4.)  The Court agrees.

Plaintiffs' sufficiency challenges plainly hinge upon their position concerning a key disputed issue in this litigation, namely, the source(s) of the alleged contaminant.  (See Pls.' Br. at 5) (implying that it is undisputed that Defendants' UST caused the contamination).)  Indeed, Defendants specifically allege that a different UST caused and/or contributed to the disputed contamination.  (See Defs.' Opp'n at 4 (summarizing Defendants' Spill Act counterclaim).)  Arguments predicated upon disputed or undeveloped issues of fact, however, fail to afford a basis for striking a party's pleading.  See Klaus v. Jonestown Bank and Trust Co., No. 12-2488, 2014 WL 1024591, at *2 (M.D. Pa. Mar. 14, 2014) ("Motions to strike should not be granted when the sufficiency of the defense depends upon disputed or undeveloped issues of fact.") (citations omitted).  Therefore, the Court rejects Plaintiffs' sufficiency challenge as a basis to strike Affirmative Defense Nos. 3 and 38. See Goldfaden v.

8

<u>Miss World (Jersey) Ltd.</u>, No. 02-712, 2005 WL 1703207, at *9
(D.N.J. July 20, 2005) (refusing to strike affirmative defenses
that turned upon questions of disputed fact).

Nor will the Court strike these Affirmative Defenses on
redundancy grounds.  Critically, although the Court may strike
any redundant defenses pursuant to Rule 12(f) "there is little
point in striking a redundant claim, since [the opposing party]
can safely respond to only the claim which it duplicates."  <u>US
LEC Comm's LLC v. Qwest Comm's Co., LLC</u>, No. 10-4106, 2011 WL
2474262, *4 (D.N.J. Jun. 20, 2011).  Therefore, the Court also
rejects Plaintiffs' position that these Affirmative Defenses
must be striken as redundant.

For all of these reasons, Plaintiffs' motion will be denied
with respect to Affirmative Defense Nos. 3 and 38.

**D. Affirmative Defenses Nos. 5, 28, and 35**

Affirmative Defense Nos. 5, 28, and 35 generally assert
that Defendants acted, at all times, "with due care" and did not
violate "any alleged duty owed to [P]laintiffs" and, as a
result, allege that the "environmental contamination alleged in
the Complaint" resulted from the "negligence and/or actions of
others," including Plaintiffs.  (Answer at 5, 7.)

Plaintiffs assert that these Defenses are "devoid of any
legal basis," because the Spill Act renders Defendants "strictly
liable without regard to fault for all cleanup and removal costs

9

as the owners" of the leaking UST.  (Pls.' Br. at 5-6.)
Nevertheless, Defendants, as stated above, have specifically
alleged that a UST previously placed on <u>Plaintiffs' property</u>
caused and/or contributed to the disputed contamination.  (<u>See,
e.g.</u>, Defs.' Opp'n at 5.)  Plaintiffs' argument therefore rests
upon disputed issues of fact, and provides no basis for striking
these Defenses.  Therefore, Plaintiffs' motion will be denied
with respect to Affirmative Defense Nos. 5, 28, and 35.

### E. Affirmative Defenses Nos. 6 and 37

Affirmative Defense Nos. 6 and 37 allege that Defendants
"acted at all times within their legal and contractual rights
and did not breach any legal or contractual duty owed to
[P]laintiffs" and that Plaintiffs' claims are otherwise "barred
due to lack of privity and lack of duty on the part of
Defendants."  (<u>See</u> Answer at 5, 7.)

In challenging these Affirmative Defenses, Plaintiffs argue
that they must be striken because "no contract" governed the
parties' relationship, thereby rendering any assertion rooted in
contractual rights or duties immaterial.  (Pls.' Reply at 5.)
Defendants, in essence, concede that contractual theories have
no relevance to this action, but assert that the Affirmative
Defenses encompass more than "claims for breach of contract" and
"apply more broadly to 'legal duties.'"  (Defs.' Opp'n at 5.)

10

The parties concede that this action presents <u>no</u> issues of contract. (<u>See</u> Defs.' Opp'n 5; Pls.' Reply at 5.)  Rather, Plaintiffs' Complaint only raises statutory and tort claims. (<u>See</u> <u>generally</u> Compl.)  Therefore, to the extent these Affirmative Defenses reference contractual rights and privity, the Court finds that the Defenses lack any reasonable relation to this litigation.  <u>See</u> <u>Deery v. Crystal Instruments Corp.</u>, No. 13-198, 2013 WL 4517867, *1 (D.N.J. Aug. 26, 2013) (citing <u>United States v. Kramer</u>, 757 F. Supp. 397, 410 (D.N.J. 1991)) (noting that motions to strike seek to "save parties the time and expense of litigating claims that could not affect the outcome of the case").  Moreover, to the extent these Defenses could be construed to rely more broadly upon non-contractual "legal duties," these Defenses are unnecessary and duplicative given the multitude of other tort-related defenses raised by Defendants.

Therefore, the Court will strike Affirmative Defense Nos. 6 and 37.

## F. Affirmative Defense No. 12

Affirmative Defense No. 12 alleges that "[P]laintiffs' claims are barred as a matter of law" for failure to comply with the "applicable statute or statutes of limitations, or other applicable law, rule, statute or regulation controlling or

requiring the institution of suit within a certain period of time following its accrual." (Answer at 6.)

Plaintiffs argue that this Defense must be stricken as legally insufficient, because Plaintiffs filed this action "within months of knowing of the [alleged] contamination," and therefore acted well within "the six year limitations period" applicable to their claims. (Pls.' Reply at 6; see also Pls.' Br. at 6)

Nevertheless, the Court need not belabor Plaintiffs' position, because it is premised upon disputed issues of fact, namely, the source of the alleged contaminant and when Plaintiffs knew, or show have known, of the existence of the contamination. As stated above, the source of the contaminant constitutes, at this time, one of the critical factual disputes in this litigation. As a result, the Court cannot, at this time, find Affirmative Defense No. 12 legally insufficient and Plaintiffs' motion will, accordingly, be denied with respect to this Defense. See Goldfaden, 2005 WL 1703207, at *9.

**G. Affirmative Defense No. 14**

Affirmative Defense No. 14 alleges that "Plaintiffs' claims are barred to the extent that [P]laintiffs failed to comply with all of the statutory and/or regulatory prerequisites necessary to bring a claim for contribution under" the Spill Act. (Answer at 6.)

Plaintiffs argue that this Defense must be striken as "legally insufficient" because Plaintiffs "have not asserted a contribution claim," and because Plaintiffs seek damages for "actually" incurred remediation costs, rather than for loss of use and enjoyment of their property. (Pls.' Br. at 7; Pls.' Reply at 6.)  Defendants counter, however, that the Spill Act only permits private claims for "remediation and/or investigation expenses," and argues that Affirmative Defense No. 14 "highlights the defective nature" of Plaintiffs' claims to the extent Plaintiffs' Complaint specifically references a request for damages associated with the "loss of 'the use and enjoyment of their property during the time it takes to remediate' the property." (Defs.' Opp'n at 7 (citing Compl. at ¶ 27).)

In this regard, Plaintiffs do not dispute that the Spill Act contains no provision for the recovery of damages for loss of use and enjoyment. (See Defs.' Opp'n at 6-7; Pls.' Reply at 6.)  See also Bahrle v. Exxon Corp., 678 A.2d 225, 231 (N.J. 1996) (concluding that the Spill Act "limits recovery to clean-up and removal costs" and does not extend "to damages arising from emotional distress, enhanced risk of disease, loss of enjoyment of property, and other economic and financial harm").  Rather, Plaintiffs dispute whether their Complaint seeks such damages, and claim that the Complaint clearly reflects that

Plaintiffs only "seek damages for remediation costs." (Pls.'
Reply at 6.)  Nevertheless, Plaintiffs' Complaint plainly
alleges that, "[b]ecause of the contamination and need for
remediation, Plaintiffs will lose the use and enjoyment of their
property during the time it takes to remediate the surface and
subsurface contamination" and, as a result, seeks compensatory
damages.  (Compl. at ¶ 27.)

Given these allegations, the Court does not find this
Defense legally insufficient to the extent it challenges the
viability of certain relief requested by Plaintiffs. Plaintiffs'
motions will therefore be denied with respect to Affirmative
Defense No. 14.

**H. Affirmative Defense No. 19**

Affirmative Defense No. 19 alleges that "Plaintiffs' claims
are barred to the extent they seek relief for conduct occurring,
or damages incurred, before the effective date of the Spill Act"
in 1977. (Answer at 6.)

In challenging this Defense, Plaintiffs argue that, based
upon "the size of the contamination plume mapped by Defendants'
environmental consultant," it "does not appear that the leak
occurred over thirty-eight years ago." (Pls.' Reply at 7.)
Defendants assert, however, that because "it is unknown when the
UST began leaking," it remains conceivable that the "leak could
have [begun] before the effective date of the [Spill Act] and

14

therefore, would not be subject" to its provisions.  (Defs.'
Opp'n at 7.)

The Court has some doubt that contamination would have, or
could have, gone unnoticed for 38 years.  Plaintiffs, however,
have not argued that the leak could, in no way, have predated
the enactment of the Spill Act, nor stated that Plaintiffs'
property (or any preceding structure) had not even been built in
1977, the year the Spill Act became effective.  Rather, based
upon the modeling of Defendants' expert, Plaintiffs suggest that
such scenario does not appear likely.  (See Pls.' Reply at 7.)
However, given Defendants' position that an earlier UST caused
the disputed contamination in this litigation, Plaintiffs'
position clearly hinges upon disputed and currently-undecided
facts, and fails to provide a basis for striking this Defense.
Plaintiffs' motion will therefore also be denied with respect to
Affirmative Defense No. 19.  See Goldfaden, 2005 WL 1703207, at
*9.

**I. Affirmative Defense No. 34**

Finally, Affirmative Defense No. 34 alleges that
Plaintiffs' "claims are barred due to the failure to join
indispensable parties."  (Answer at 7.)

Plaintiffs argue that this Defense must be stricken,
because this action presently includes all necessary and
indispensable parties.  (See Pls.' Reply at 7.)  Defendants

15

counter, however, that the prior owners of Plaintiffs' property must be joined to this action, as a result of their theory that the disputed contamination resulted from a prior UST.  (<u>See</u> Defs.' Opp'n at 7-8.)

In this respect, and for the reasons stated above, the legal sufficiency of this Defense turns upon disputed issues of fact, namely the UST responsible for the oil contamination, and cannot be stricken at this stage in the litigation.  Plaintiffs' motion will, accordingly, be denied with respect to Affirmative Defense No. 34.  <u>See</u> <u>Goldfaden</u>, 2005 WL 1703207, at *9.

## V.    CONCLUSION

For all of these reasons, Plaintiffs' motion will be granted with respect to Affirmative Defense Nos. 21 through 27, granted with respect to Affirmative Defense Nos. 6 and 37, and denied with respect to all other Affirmative Defenses.  An accompanying Order will be entered.

 

 

<u>  April 22, 2015  </u>                         <u>  s/ Jerome B. Simandle  </u>
Date                                          JEROME B. SIMANDLE
                                              Chief U.S. District Judge

16